## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT CHARLESTON

**CHERYL FOX, as Administratrix of the Estate of Wayne A. Dodson,**

       **Plaintiff,**

**v.**                                    **Civil Action No.** _2:25-cv-00752_____

                                           **Judge:** _____

**HERBERT J. THOMAS MEMORIAL HOSPITAL ASSOCIATION, d/b/a THOMAS MEMORIAL HOSPITAL, KYLE LYNNE FAIRCHILD, R.N., ANDREW S. MORGAN, D.O., CITY OF SOUTH CHARLESTON, and SGT. ANDREW FERREBEE, SGT. A. DAVIS, OFFICER JACOB POLAND, and OFFICER B.C. ADKINS, in their individual capacities,**

       **Defendants.**

## COMPLAINT

      This is a civil action by Plaintiff Cheryl Fox, Administratrix of the Estate of Wayne A. Dodson, deceased, seeking compensatory and punitive damages resulting from the death of Wayne A. Dodson while he was a patient at Herbert J. Thomas Memorial Hospital Association and was in the care, custody and control of the Defendant police officers named herein. Plaintiff seeks damages for medical negligence against Herbert J. Thomas Memorial Hospital Association and its agents and employees Dr. Andrew S. Morgan and Kyle Lynne Fairchild, R.N. Plaintiff further seeks damages and as allowed to her pursuant to 42 U.S.C. §1983 against Defendants Sgt. Andrew Ferrebee, Sgt. A. Davis, Officer Jacob Poland and Officer B.C. Adkins, individually, each of whom were acting under color of law as employees and agents of the City of South Charleston. Plaintiff also seeks compensatory damages from the City of South Charleston for a *Monell* claim under 42 U.S.C. §1983, and under pendent state law claims, including negligence, negligent

1

supervision, negligent training, and negligent retention.

## **PARTIES**

1.      Plaintiff Cheryl Fox is a citizen and resident of Kanawha County, West Virginia, and is the mother of Wayne Dodson, who died on March 4, 2024.

2.      Plaintiff's decedent Wayne A. Dodson ("Mr. Dodson") was at all times relevant herein a citizen and resident of Kanawha County, West Virginia, prior to and at the time of his death on March 4, 2024.

3.      The Kanawha County Fiduciary Supervisor appointed Plaintiff Cheryl Fox as Administratrix of the Estate of Wayne Dodson on May 1, 2024. *(See Letter of Administration attached hereto and made a part hereof and marked **as Exhibit A)***.

4.      Defendant Herbert J. Thomas Memorial Hospital Associates d/b/a Thomas Memorial Hospital ("Thomas Memorial Hospital") is a healthcare facility, which at all times relevant, was licensed, operating, and caring for patients in West Virginia.

5.      Defendant Andrew S. Morgan, D., ("Dr. Morgan") is a healthcare provider who, at all times relevant, was licensed and practicing medicine in the state of West Virginia.

6.      Defendant, Kyle Lynne Fairchild, R.N., ("Nurse Fairchild") is a healthcare provider who, resides in Florida, at all times relevant, was licensed and practicing medicine in the state of West Virginia.

7.      Defendant City of South Charleston ("CSC") is a political subdivision of the State of West Virginia, located in Kanawha County, West Virginia. The City of South Charleston operates the South Charleston Police Department ("SCPD").

8.      Defendant Sgt. Andrew Ferrebee ("Ferebee") is a citizen of West Virginia, and, upon information and belief, is a resident of Kanawha County, West Virginia. At all relevant times,

Sgt. Andrew Ferrebee was acting under color of law and within the scope of his employment as an officer with the South Charleston Police Department ("SCPD"). Defendant Sgt. Ferrebee is sued individually as an employee of the City of South Charleston.

9.      Defendant Sgt. A. Davis ("Davis") is a citizen of West Virginia, and, upon information and belief, is a resident of Kanawha County, West Virginia. At all relevant times, Sgt. Davis was acting under color of law and within the scope of his employment as an officer with the South Charleston Police Department ("SCPD"). Defendant Sgt. Davis is sued individually as an employee of the City of South Charleston.

10.     Defendant Officer Jacob Poland ("Poland") is a citizen of West Virginia, and, upon information and belief, is a resident of Kanawha County, West Virginia. At all relevant times, Officer Poland was acting under color of law and within the scope of his employment as an officer with the South Charleston Police Department ("SCPD"). Defendant Officer Poland is sued individually as an employee of the City of South Charleston.

11.     Defendant Officer B.C. Adkins ("Adkins") is a citizen of West Virginia, and, upon information and belief, is a resident of Kanawha County, West Virginia. At all relevant times, B.C. Adkins was acting under color of law and was acting within the scope of his employment as an officer with the South Charleston Police Department ("SCPD"). Defendant Officer Adkins is sued individually as an employee of the City of South Charleston.

## JURISDICTION, VENUE, AND CIVIL ACTION STATUTORY PRE-REQUISITES

12.     This Court has original federal question jurisdiction under 28 U.S.C. 1331 because Plaintiff seeks damages and other remedies pursuant under federal law, specifically 42 U.S.C. 1983.

13.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant

to 28 U.S.C. §1367.

14.     This action seeks damages for violations of the common and statutory laws of the State of West Virginia.

15.     Venue is appropriate in the Southern District of West Virginia because all Parties are located or work in this District and the actions giving rise to this civil action occurred within the territorial boundaries of this District.

## FACTUAL ALLEGATIONS

16.     On February 24, 2024, police officers from the South Charleston Police Department ("SCPD") were dispatched to the home of Wayne Dodson for a safety check after receiving call that Mr. Dodson may be suicidal.

17.     SCPD Officers Lassiter and Thompson were the first officers to arrive at Mr. Dodson's home where Mr. Dodson and his two daughters, who were minor children, answered the door. Officers Lassiter and Thompson explained that there was an outstanding warrant for Mr. Dodson and allowed him to make arrangements for his mother, Plaintiff Cheryl Fox ("Mrs. Fox"), to come and get his daughters before he was arrested.

18.     Mr. Dodson asked the officers to permit him to turn himself in the following Monday after his daughters had returned to their mother. Mr. Dodson expressed severe anxiety about going to jail.

19.     Several other officers arrived at the scene while awaiting the arrival of Mrs. Fox to remove Mr. Dodson's daughters from the home, including Defendants Ferrebee and Davis, who arrested Mr. Dodson after Mrs. Fox and the children left the home.

20.     Defendant Ferrebee's body camera video shows that Mr. Dodson stood in front of his refrigerator drinking alcohol while Defendant Davis told Mr. Dodson that the officers had no

4

problem with him chugging the alcohol. Defendant Davis stated: "you going to chase it with a diet coke real quick." (*See, Ferrebee body camera video, attached hereto and made a part hereof and is marked **as Exhibit B).***

21.    The body camera video shows that Mr. Dodson staggered as he attempted to walk down the steps of his home; that Defendant Ferrebee told Defendant Davis that he thought that Mr. Dodson took something; and that Defendant Davis responded that Defendant Ferrebee should get Mr. Dodson to the jail and not worry about his obvious intoxication. (*See **Exhibit B**, Ferrebee Video at 13:39-13:43:12).*

22.    On February 24, 2024, Defendant Ferrebee took Mr. Dodson into custody and transported him to the South Central Regional Jail in Kanawha County, West Virginia. Mr. Dodson was so severely intoxicated when he arrived at the jail booking area that the regional jail refused to accept custody of Mr. Dodson without a medical clearance from the hospital.

23.    Defendant Ferrebee subsequently transported Mr. Dodson to Thomas Memorial Hospital on February 24, 2024, for a medical clearance. He transferred custody of Mr. Dodson to Defendant Officers Poland and Adkins, who handcuffed both of Mr. Dodson's wrists to the bedrails and remained with him at Thomas Memorial Hospital.

24.    Defendant Dr. Andrew S. Morgan was the emergency room treating physician and an agent and employee of Thomas Memorial Hospital who treated Mr. Dodson. Dr. Morgan noted that Mr. Dodson was awake and interactive with him and voiced no complaints other than wanting to go to sleep. Dr. Morgan reported a history of hypertension, hyperlipidemia, diabetes, and sleep apnea.

25.    The notes of Dr. Morgan are inconsistent with nurse's notes indicating that Mr. Dodson could not provide medical history and that vitals could not be obtained due to the severity

5

of Mr. Dodson's intoxication.

26.    Dr. Morgan's medical decision-making narrative states that Mr. Dodson's alcohol level was "374." However, Dr. Morgan provided no medical care to address Mr. Dodson's extreme level of intoxication other than to have his handcuffs removed long enough to raise him up in the bed and elevate his head. Dr. Morgan discharged Mr. Dodson to law enforcement stating that he left in awakened stable condition.

27.    Defendant Nurse Kyle Fairchild was an emergency room nurse and an agent and employee of Defendant Thomas Memorial Hospital. Defendant Nurse Fairchild documented that Mr. Dodson presented for medical clearance on February 24, 2024, at 15:44 (3:44 p.m.) on February 24, 2024, and noted that the patient had periods of outbursts and incoherence.

28.    Notwithstanding Mr. Dodson's "discharge" he remained at Thomas Memorial Hospital for several hours, with both hands cuffed to the bedrails.

29.    During his continued stay at the hospital, Nurse Fairchild noted that Mr. Dodson was intoxicated and incoherent, and due to his obvious condition the nursing staff was unable to readily obtain compliance for monitoring vital signs. She also noted that Mr. Dodson had sleep apnea.

30.    The nursing notes include an entry for February 24, 2024, at 18:25 (6:25 p.m.) (created 02/24/23:15) in which Nurse Fairchild reported that Mr. Dodson was discharged and turned over to law enforcement. "Law enforcement stated they are trying to decide how to move pt. into police car."

31.    Defendant Officers Poland and Adkins positioned themselves in and/or outside Mr. Dodson's hospital room. Nursing notes state that law enforcement was bedside.

32.    Sometime during the period 6:25 p.m., when Defendant Nurse Fairchild last

checked on Mr. Dodson, and 7:23 p.m. Mr. Dodson vomited and suffered an aspiration event.

33.    SCPD Officer Dawson arrived at the hospital at 7:23 p.m. on February 24, 2024. Officer Dawson's body camera video reflects his approach to Mr. Dodson's hospital room and shows Defendant Poland sitting in a chair outside Mr. Dodson's room facing away from Mr. Dodson and looking at his cellphone. Defendant Officer Adkins is observed standing in the doorway of Mr. Dodson's room looking at Mr. Dodson. (*See Dawson body camera video, attached hereto and made a part hereof and marked as **Exhibit C**).

34.    Defendants Adkins and Poland did not notify medical staff that Mr. Dodson had vomited and appeared to be gasping for breath. (*See Dawson body camera video, attached as **Exhibit C**).

35.    The Dawson body camera video shows that Officer Dawson took a few steps into the room and observed vomit on Mr. Dodson's face. Officer Dawson returned to the hallway and called for Defendant Nurse Fairchild's attention. (*See Dawson body camera video, attached as **Exhibit C**).

36.    Officer Dawson's body camera video evidences that Defendant Fairchild failed to promptly address Mr. Dodson's medical crisis. (*See Dawson body camera video no. 2 at 19:23:22-19:29 attached as **Exhibit C**).

37.    A nursing note created at 19:53 states that Nurse Fairchild entered Mr. Dodson's room at 19:26 (7:26 p.m.). Officer Dawson's body camera video shows Mr. Dodson had labored breathing as soon as Defendant Nurse Fairchild walked in the room. (*See Dawson body camera video, attached as **Exhibit C**).

38.    Despite obvious signs that Mr. Dodson was having a respiratory emergency, body camera video shows that Nurse Fairchild took her time wiping Mr. Dodson's face, wiped the nasal

tube, replaced the nasal tube on Mr. Dodson's face, and stood in the room watching Mr. Dodson gasping for breath. (*See Dawson body camera video, attached as **Exhibit C**)*.

39.    Nurse Fairchild did not call for help when it was obvious that Mr. Dodson was in respiratory distress. Instead, Officer Dawson, who appeared to be getting frustrated with Defendant's Fairchild's lack of response to Mr. Dawson's distress, went into the hallway and shouted for three other nurses who stood at the end of the hall to come to assist with Mr. Dodson. (*See Dawson body camera video, attached as **Exhibit C**).*

40.    Mr. Dodson was unresponsive and was moved to another room for resuscitation. Medical records noted that Mr. Dodson was handcuffed to the bed by law enforcement on both wrists and that his limbs were blue and hypoxic.

41.    Dr. William Wade admitted Wayne Dodson to the ICU after he had aspirated while left unattended and unmonitored by Dr. Morgan, Nurse Fairchild, and the medical staff at Thomas Memorial Hospital.

42.    Dr. Wade diagnosed cardiac arrest, acute respiratory failure with hypoxia, septic shock, lactic acidosis, acute renal failure, liver shock, and alcohol intoxication.

43.    Wayne Allen Dodson remained on life support until he died on March 4, 2024.

## COUNT I: MEDICAL MALPRACTICE/NEGLIGENCE
### (Andrew S. Morgan, D.O.)

44.    Plaintiff re-alleges and incorporates by reference all of the foregoing allegations as if fully stated herein.

45.    At all times relevant hereto Defendant Dr. Morgan was a health care provider as defined by West Virginia law.

46.    Defendant Dr. Morgan owed a duty to Mr. Dodson to skillfully, prudently, and thoroughly diagnose, care, treat, advise, and observe him in such a manner as would a reasonably

prudent healthcare provider who was confronted with the same or similar conditions and circumstances.

47.   Defendant Dr. Morgan owed a duty to Mr. Dodson to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances.

48.   Defendant Dr. Morgan negligently breached the duty of care owed to Mr. Dodson and committed negligent conduct by negligently and improperly evaluating and treating him while he was in the care of Dr. Morgan and Thomas Memorial Hospital. Defendant Dr. Morgan failed to exercise the degree of care, skill, and learning required or expected of reasonable, prudent healthcare providers acting in same or similar circumstances, all in violation of the applicable standards of care.

49.   In his treatment of the Plaintiff Defendant Dr. Morgan deviated from the standard of care by:

a.   Failing to document any changes of Mr. Dodson's recorded symptoms following the fluids and medication administered;

b.   Failing to treat Mr. Dodson's extreme intoxications;

c.   Failing to monitor Mr. Dodson's vitals while he remained handcuffed to the hospital bed;

d.   Failing to properly evaluate Wayne Allen Dodson;

e.   Failing to examine Wayne Allen Dodson;

f.   Failing to re-evaluate following treatment;

g.   Failing to stabilize Wayne Allen Dodson before release; and

h.     By being otherwise negligent.

50.     As a direct and proximate cause of these actions and inactions of Dr. Morgan, Mr. Dodson suffered great pain and distress, physical and mental injuries, emotional distress, an aspiration event, which led to a cardiac arrest and acute respiratory failure with hypoxia and other damages that ultimately resulted in his death nine days later on March 4, 2024.

51.     As a direct and proximate result of the medical negligence of Defendant Dr. Morgan, Plaintiff has suffered great sorrow and mental anguish; has incurred medical bills, funeral costs and expenses, attorneys' fees and other costs; and is entitled to recover such damages as allowed by law and awarded by a jury.

52.     The actions of Defendant Dr. Morgan were willful, wanton, and undertaken with reckless disregard and/or reckless indifference to the rights of Mr. Dodson to proper medical care, entitling Plaintiff to punitive damages in an amount to be determined by a jury.

53.     WHEREFORE, Plaintiff respectfully demands that she be awarded judgment against the Defendant Dr. Morgan in amount to fully compensate her for her losses, including, but not limited to, the pain and suffering, medical expenses, funeral expenses, and all other losses recoverable in law, including punitive damages, if allowed by law, together with prejudgment and post-judgment interest, the costs expended in the prosecution of this lawsuit, including reasonable attorney fees, and for such other and further relief as this Court may deem proper as compensation for the injuries suffered by Wayne A. Dodson and his death.

## COUNT II: MEDICAL MALPRACTICE/NEGLIGENCE
### (Kyle Lynne Fairchild, R.N.)

54.     Plaintiff re-alleges and incorporates by reference all of the foregoing allegations as if fully stated herein.

55.     At all times relevant hereto Defendant Nurse Fairchild was a health care provider

10

as defined by West Virginia law.

56.    Defendant Nurse Fairchild owed a duty to Mr. Dodson to skillfully, prudently, and thoroughly diagnose, care, treat, advise, and observe him in such a manner as would a reasonably prudent healthcare provider who was confronted with the same or similar conditions and circumstances.

57.    Defendant Nurse Fairchild owed a duty to Mr. Dodson to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances.

58.    Defendant Nurse Fairchild negligently breached the duty of care owed to Mr. Dodson and committed negligent conduct by negligently and improperly evaluating and treating him while he was in the care of Nurse Fairchild and Thomas Memorial Hospital. Defendant Nurse Fairchild failed to exercise the degree of care, skill, and learning required or expected of reasonable, prudent healthcare providers acting in same or similar circumstances, all in violation of the applicable standards of care.

59.    In her treatment and care of Mr. Dodson, Nurse Fairchild deviated from the standard of care by:

    a.  Failing to notify physician of Mr. Dodson increased somnolence and frequent destabilized vitals;

    b.  Failing to treat Mr. Dodson's extreme intoxications;

    c.  Failing to monitor Mr. Dodson's vitals while he remained handcuffed to the hospital bed;

    d.  Failing to properly evaluate Wayne Allen Dodson;

11

e.   Failing to examine Wayne Allen Dodson;

f.   Failing to stabilize Wayne Allen Dodson before release; and

g.   By being otherwise negligent.

60.     As a direct and proximate cause of these actions and inactions of Nurse Fairchild, Mr. Dodson suffered great pain and distress, physical and mental injuries, emotional distress, an aspiration event, which led to a cardiac arrest and acute respiratory failure with hypoxia and other damages that ultimately resulted in his death nine days later on March 4, 2024.

61.     As a direct and proximate result of the medical negligence of Defendant Nurse Fairchild Plaintiff has suffered great sorrow and mental anguish; has incurred medical bills, funeral costs and expenses, attorneys' fees and other costs; and is entitled to recover such damages as allowed by law and awarded by a jury.

62.     The actions of Defendant Nurse Fairchild were willful, wanton, and undertaken with reckless disregard and/or reckless indifference to the rights of Mr. Dodson to proper medical care, entitling Plaintiff to punitive damages in an amount to be determined by a jury.

63.     WHEREFORE, Plaintiff respectfully demands that she be awarded judgment against the Defendant Nurse Fairchild in amount to fully compensate her for her losses, including, but not limited to, the pain and suffering, medical expenses, funeral expenses, and all other losses recoverable in law, including punitive damages, if allowed by law, together with prejudgment and post-judgment interest, the costs expended in the prosecution of this lawsuit, including reasonable attorney fees, and for such other and further relief as this Court may deem proper as compensation for the injuries suffered by Wayne A. Dodson and his death.

### COUNT III   MEDICAL NEGLIGENCE
### (Thomas Memorial Hospital)

64.     Plaintiff re-alleges and incorporates by reference all of the foregoing allegations

as if fully stated herein.

65.    Defendant Thomas Memorial Hospital is a health care provider as defined by West Virginia law.

66.    Upon information and belief, Thomas Memorial Hospital was, at all times relevant, the employer in fact and under the law of the nurses and other healthcare providers treating Wayne Allen Dodson from February 24, 2024, until his death at Thomas Memorial Hospital on March 4, 2024.

67.    Defendant Thomas Memorial Hospital (TMH) employs the medical staff at TMH and is therefore vicariously liable for the negligent and otherwise tortious conduct of its employees.

68.    Defendant Thomas Memorial Hospital, its agents and employees, owed a duty to Mr. Dodson to skillfully, prudently, and thoroughly diagnose, care, treat, advise, and observe him in such a manner as would a reasonably prudent healthcare provider who was confronted with the same or similar conditions and circumstances.

69.    Defendant Thomas Memorial Hospital, its agents and employees, owed a duty to Mr. Dodson to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances.

70.    Defendant Thomas Memorial Hospital, its agents and employees, negligently breached the duty of care owed to Mr. Dodson and committed negligent conduct by negligently and improperly evaluating and treating Mr. Dodson while he was in the care of TMH staff.

71.    Defendant Thomas Memorial Hospital, its agents and employees, failed to exercise the degree of care, skill, and learning required or expected of reasonable, prudent health

care providers acting in same or similar circumstances, all in violation of the applicable standards of care, for all of which Defendant Thomas Memorial Hospital is vicariously liable.

72.     Defendant Thomas Memorial Hospital, its agents and employees, failed to properly evaluate, treat, and monitor Mr. Dodson's condition upon admission to TMH, in a scenario where death by aspiration and cardiac arrest was clearly foreseeable as a result of its negligent conduct, for all of which Defendant Thomas Memorial Hospital is vicariously liable.

73.     Defendant Thomas Memorial Hospital, its agents and employees, failed to properly evaluate and treat Mr. Dodson, failed to properly examine Mr. Dodson, and improperly and negligently failed to monitor him while he was in their care, for all of which Defendant Thomas Memorial Hospital is vicariously liable.

74.     Defendant Thomas Memorial Hospital breached its duty of care to Mr. Dodson as follows:

    a.     Thomas Memorial Hospital, through its employees and agents, failed to properly monitor Mr. Dodson during his hospital stay.

    b.     Thomas Memorial Hospital, through its employees and agents, failed to treat Mr. Dodson's extreme intoxication on February 24, 2024.

    c.     Thomas Memorial Hospital, through its employees and agents, failed to respond to Mr. Dodson's increased somnolence and frequent destabilized vitals.

    d.     Thomas Memorial Hospital, through its employees and agents, failed to monitor Mr. Dodson's vitals while he remained handcuffed to the hospital bed.

    e.     Thomas Memorial Hospital, through its employees and agents, failed to

14

properly evaluate Wayne Allen Dodson;

f.  Thomas Memorial Hospital, through its employees and agents, failed to examine Wayne Allen Dodson.

g.  Thomas Memorial Hospital, through its employees and agents, failed to stabilize Wayne Allen Dodson before release.

75.  As a proximate cause of these actions and inactions of Thomas Memorial Hospital, Mr. Dodson suffered enduring pain and distress until his death nine days later on March 4, 2024.

76.  As a direct and proximate result of the medical negligence of Defendant Thomas Memorial Hospital, its agents and employees, Plaintiff has suffered great sorrow and mental anguish; has incurred medical bills, funeral costs and expenses, attorneys' fees and other costs; and is entitled to recover such damages as allowed by law and awarded by a jury.

77.  The actions of Defendant Thomas Memorial Hospital, its agents and employees, were willful, wanton, and undertaken with reckless disregard and/or reckless indifference to the rights of Mr. Dodson to proper medical care, entitling Plaintiff to punitive damages in an amount to be determined by a jury.

78.  WHEREFORE, Plaintiff respectfully demands that she be awarded judgment against the Defendant in amount to fully compensate her for her losses, including, but not limited to, the pain and suffering, medical expenses, funeral expenses, and all other losses recoverable in law, including punitive damages, if allowed by law, together with prejudgment and post-judgment interest, the costs expended in the prosecution of this lawsuit, including reasonable attorney fees, and for such other and further relief as this Court may deem proper as compensation for the injuries suffered by Wayne A. Dodson and his death.

**COUNT I**

15

## VIOLATION OF 42 U.S.C. § 1983
### Deliberate Indifference of Medical Needs – Failure to Protect

### (Defendant Officers Ferrebee and Davis)

79.     Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of this Complaint.

80.     Pursuant to the provisions of 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws shall be liable to the party injured in an action at law.

81.     Under 42 U.S.C. § 1983, a person has a federal cause of action for money damages against an individual acting under color of state law who deprives another of rights, privileges, or immunities secured by the United States Constitution and federal laws.

82.     Police officers have a duty under clearly established laws, including the United States Constitution, the Fourteenth Amendments, 42 U.S.C. §1983, and other applicable federal laws, to protect detainees in their custody and control from a substantial risk of harm.

83.     Plaintiff asserts her claims against Defendants Sgt. Andrew Ferrebee and Sgt. A. Davis individually, who, at all times relevant herein were police officers with the South Charleston Police Department and employees of Defendant CSC and were acting under color or pretense of state law, customs, practices, usage, or policy.

84.     At all times relevant hereto Defendants Ferrebee and Davis knew or should have known of the clearly established laws that protected the constitutional rights of Mr. Dodson, including the rights to safety, protection and medical care while in the custody and care of police officers, and to be free from any violations of his liberty interests and personal security protected by the Fourteenth Amendment.

16

85.     As a person in the custody and control of Defendants Ferrebee and Davis, Mr. Dodson had a clearly established right under the Fourteenth Amendment to be protected from a substantial risk of harm while under the care and custody of a police officer. Defendants Ferrebee and Davis knew or should have known about the clearly established laws that render deliberate indifference to the safety of detainees from a substantial risk of harm as unconstitutional.

86.     As a person in the custody and control of Defendants Ferrebee and Davis, Mr. Dodson had a clearly established right under the Due Process Clause of the Fourteenth Amendment to safety and protection while in the custody and care of police officers. Defendants Ferrebee and Davis knew or should have known of the clearly established laws protecting the rights of Mr. Dodson, including the right to safety and protection while in the custody and care of police officers, and to be free from any violations of his liberty interests and personal security protected by the Fourteenth Amendment. Defendants Ferrebee and Davis were well aware that Mr. Dodson was very anxious about returning to jail.

87.     Defendants Ferrebee and Davis observed Mr. Dodson chugging alcohol and permitted him to do so prior to Defendants placing Mr. Dodson in handcuffs.

88.     Defendants Ferrebee and Davis were aware that Mr. Dodson was showing signs of extreme intoxication when he was placed in the police cruiser for transport to the regional jail.

89.     Defendant Ferrebee transported Mr. Dodson to the regional jail despite knowing that Mr. Dodson was intoxicated.

90.     From the moment Mr. Dodson was taken into custody by Defendants Ferrebee and Davis, the Defendant police officers owed Mr. Dodson a duty to protect him from harm. Said Defendants breached that duty by willfully allowing Mr. Dodson to drink excessive amounts of alcohol while in their custody and care; ignoring his obvious intoxication; attempting to incarcerate

17

him knowing of his extreme intoxication; and failing to obtain medical assistance for his obvious intoxication.

91.     At the time of the incidents described herein, the law was clearly established that deliberate indifference to the safety of detainees from a substantial risk of harm is unconstitutional.

92.     Defendants Ferrebee and Davis knew of and disregarded an excessive risk to the health or safety of Mr. Dodson, and further acted in a manner that demonstrated deliberate indifference to the safety and serious medical needs of Mr. Dodson, resulting in unnecessary and wanton infliction of pain and death in violation of the United States Constitution's clear prohibitions against cruel and unusual punishment and deprivation of life without due process or jury trial, and in violation of various provisions of Defendants acted with a conscious or reckless disregard of the consequences of their acts or omissions.

93.     Defendants Ferrebee and Davis intentionally, recklessly, and with deliberate indifference violated the Constitutional rights of Wayne Allen Dodson ensured to him under the Fourteenth Amendment to the United States Constitution when they acted with deliberate indifference towards his medical needs and with reckless disregard towards his health, safety, and constitutional rights. .

94.     Defendants' acts of deliberate indifference constituted treatment, or lack thereof, that was grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness.

95.     Defendants Ferebee and Davis intentionally and recklessly failed to protect Mr. Dodson while he was under their custody and control.

96.     The actions of Defendants Ferrebee and Davis were willful, wanton and/or undertaken with reckless disregard and/or reckless indifference to the rights of Wayne Allen

Dodson, thereby entitling the Plaintiff to an award of damages against the Defendants.

97.    The actions of Defendants Ferrebee and Davis were willful, wanton and/or undertaken with reckless disregard and/or reckless indifference to the rights of Wayne Allen Dodson, thereby entitling the Plaintiff to an award of punitive damages against these individual Defendants.

**COUNT V:**

**<u>VIOLATION OF 42 U.S.C. § 1983</u>**

**Deliberate Indifference To Medical Needs – Failure to Protect**
**(Defendant Officers Poland and Adkins)**

98.    Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of this Complaint.

99.    Pursuant to the provisions of 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws shall be liable to the party injured in an action at law.

100.    Under 42 U.S.C. § 1983, a person has a federal cause of action for money damages against an individual acting under color of state law who deprives another of rights, privileges, or immunities secured by the United States Constitution and federal laws.

101.    Police officers have a duty under clearly established laws, including the United States Constitution, the Fourteenth Amendments, 42 U.S.C. §1983, and other applicable federal laws, to protect detainees in their custody and control from a substantial risk of harm.

102.    Plaintiff asserts her claims against Defendants Officers Poland and Adkins individually, who, at all times relevant herein were police officers with the South Charleston Police

Department and employees of Defendant CSC and were acting under color or pretense of state law, customs, practices, usage or policy.

103.    At all times relevant hereto Defendants Poland and Adkins knew or should have known of the clearly established laws that protected the constitutional rights of Mr. Dodson, including the rights to safety, protection and medical care while in the custody and care of police officers, and to be free from any violations of his liberty interests and personal security protected by the Fourteenth Amendment.

104.    As a person in the custody and control of Defendants Poland and Adkins, Mr. Dodson had a clearly established right under the Fourteenth Amendment to be protected from a substantial risk of harm while under the care and custody of a police officer. Defendants Poland and Adkins knew or should have known about the clearly established laws that render deliberate indifference to the safety of detainees from a substantial risk of harm as unconstitutional.

105.    As a person in the custody and control of Defendants Poland and Adkins, Mr. Dodson had a clearly established right under the Due Process Clause of the Fourteenth Amendment to safety and protection while in the custody and care of police officers.

106.    Defendants Poland and Adkins knew or should have known of the clearly established laws protecting the rights of Mr. Dodson, including the right to safety and protection while in the custody and care of police officers, and to be free from any violations of his liberty interests and personal security protected by the Fourteenth Amendment.

107.    Defendants Poland and Adkins were well aware that Mr. Dodson was extremely intoxicated when he was in their care and custody at Thomas Memorial Hospital.

108.    Defendants Poland and Adkins kept Mr. Dodson handcuffed to the hospital bed despite Mr. Dodson intoxicated somnolent condition.

20

109.    Defendants Poland and Adkins failed to notify medical staff when Mr. Dodson vomited despite being tasked with observing Mr. Dodson.

110.    Defendants Poland and Adkins knew of and disregarded an excessive risk to the health or safety of Mr. Dodson, and further acted in a manner that demonstrated deliberate indifference to the safety and serious medical needs of Mr. Dodson, resulting in unnecessary and wanton infliction of pain and death in violation of the United States Constitution's clear prohibitions against cruel and unusual punishment and deprivation of life without due process or jury trial, and in violation of various provisions of Defendants acted with a conscious or reckless disregard of the consequences of their acts or omissions.

111.    Defendants Poland and Adkins intentionally, recklessly, and with deliberate indifference violated the Constitutional rights of Wayne Allen Dodson ensured to him under the Fourteenth Amendment to the United States Constitution when they acted with deliberate indifference and reckless disregard towards his health, safety and constitutional rights.

112.    Defendants' acts of deliberate indifference constituted treatment, or lack thereof, that was grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness.

113.    Defendants Poland and Adkins intentionally and recklessly failed to protect Mr. Dodson while he was under their custody and control.

114.    The actions of Defendants Poland and Adkins were willful, wanton and/or undertaken with reckless disregard and/or reckless indifference to the rights of Wayne Allen Dodson, thereby entitling the Plaintiff to an award of damages against the Defendants.

115.    The actions of Defendants Poland and Adkins were willful, wanton and/or undertaken with reckless disregard and/or reckless indifference to the rights of Wayne Allen

Dodson, thereby entitling the Plaintiff to an award of punitive damages against these individual Defendants.

**COUNT VI**
**VIOLATION OF 42 U.S.C. §1983**

**(Defendant City of South Charleston)**

116.   Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, all the allegations contained in the above paragraphs of this Complaint.

117.   The allegations against Defendant City of South Charleston (CSC) specifically set forth herein state a claim for relief against CSC under the laws of the State of West Virginia and under 42 U.S.C. §1983 because the conduct of Defendant CSC and Defendants Ferrebee, Davis, Poland and Adkins ("Defendant Officers") not only occurred while the police officers were acting under color of law and under the aegis of the CSC, but also, upon information and belief, resulted directly from the express written or unwritten customs and policies of the CSC.

118.   Defendant CSC is liable under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986). If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable under *Monell. See City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988).

119.   Upon information and belief, Defendant CSC developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in South Charleston, West Virginia, which caused the violation of Mr. Dodson's constitutional rights by the Defendant Officers under 42 U.S.C. §1983.

120.    Upon information and belief, Defendant City of South Charleston at all relevant

times has maintained policies, customs, or practices that have been the cause, the moving force, behind the violation of citizens' rights. Specifically, these policies, customs, and practices involve:

    a. Transporting heavily intoxicates, sick, or injured arrestees to the regional jail rather than obtaining medical treatment for arrestees.

    b. Shackling intoxicated, sick, or injured arrestees to hospital beds when the arrestee does not pose a flight risk.

    c. Failing to observe and obtain prompt medical attention for shackled intoxicated, sick, or injured arrestees.

121.    Upon information and belief, Defendant CSC, through the South Charleston Police Department, through patterns and customs allowed improper conduct by its agents and employees, including Defendant Officers, that resulted in deliberate indifference to Mr. Dodson's serious medical needs; a failure to properly monitor, observe and supervise Mr. Dodson when he demonstrated an obvious need for medical treatment; a failure to obtain immediate medical care for him when needed; and a failure to protect him, all while he was in their care, custody and control.

122.    Defendant Officers acted in such a reckless, negligent and improper manner that the constitutional rights of Mr. Dodson were violated.

123.    Defendant CSC had a pattern and practice of customs and policies that were inadequate and reckless in several aspects, including the failure to properly train its police officers in recognizing serious medical health issues; the failure to properly train its police officers in providing safety, protection, and medical assistance to detainees suffering from medical issues; failing to properly monitor and supervise police officers who previously failed to provide such safety, protection and medical assistance to detainees suffering from medical health issues and

presenting a danger to themselves or others; failing to follow suggested, adopted and/or implemented policies and procedures for CSC and SCPD regarding treatment of detainees suffering from medical issues and presenting a danger to themselves or others; and implementing customs, policies and procedures, whether written or unwritten, condoning, encouraging, and demonstrating indifference to the safety, protection, and medical needs of detainees.

124.    Defendant CSC's systematic failure to train its officers adequately to recognize an acute medical crisis such as a person becoming overly intoxicated and presenting a danger to himself or others is tantamount to a defacto policy, custom, or practice for which Defendant CSC is liable. By failing to train its officers to detect common, obvious, and emergent medical health situations of detained citizens, the CSC adopted a policy of deliberate indifference toward a particularly at-risk segment of its inhabitants.

125.    Defendant CSC had a policy and/or custom of inadequately and improperly investigating instances of its police officers failing to provide safety, protection and medical care to detainees who exhibited symptoms of medical health issues and presented a danger to themselves or others.

126.    Defendant CSC failed to provide adequate training to its police officers regarding the safety, protection and medical care to detainees notwithstanding foreseeable consequences that could result from such an omission of instruction. The death of Mr. Dodson was a foreseeable result of Defendant CSC failing to provide adequate training to its police officers, including the Defendant Officers.

127.    Upon information and belief, Defendant CSC maintained a policy and custom of inadequately and improperly hiring, training, and/or supervising police officers employed through the South Charleston Police Department, including the Defendant Officers named herein.

128.    Upon information and belief, Defendant CSC improperly tolerated and implicitly approved of the acts of misconduct by its police officers; did not require appropriate in-service training or re-training of officers who were known to have engaged in a deliberate indifference to a person's serious medical needs; failed to train its employees on how to report observed medical or mental health issues; and failed to properly investigate complaints against its employees, including Defendant Officers.

129.    Upon information and belief, Defendant CSC failed to adequately discourage further constitutional violations on the part of its police officers, resulting in a high likelihood of additional occurrences of improper misconduct, all of which was foreseeable by Defendant CSC.

130.    Upon information and belief, Defendant CSC failed to properly train the police officers employed through the South Charleston Police Department, including Defendant Officers, on their duty to protect detainees who exhibited signs of intoxication and who demonstrated a need for medical care; their duty to closely monitor, observe and supervise persons demonstrating a need for medical treatment; and further failed to train its employees that such omissions manifested deliberate indifference to the rights of citizens of South Charleston, West Virginia, including Plaintiff's decedent, Mr. Dodson.

131.    Upon information and belief, the policy and custom of Defendant CSC is evidenced through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

132.    Upon information and belief, as a result of the above-described policies and customs, Defendant Officers believed that their actions would not be properly monitored by supervisory officers and that such misconduct, including conduct that included Constitutional violations and other improper contact with detainees, prisoners, inmates, and arrestees, would not

be investigated or sanctioned.

133.    Upon information and belief, Defendant CSC developed and maintained an official policy or custom, fairly attributable to Defendant CSC, that proximately caused the deprivation of the Constitutional rights of Plaintiff's decedent, Mr. Dodson. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978).

134.    Upon information and belief, Defendant CSC engaged in a pattern and practice of behavior through the City of South Charleston Department that caused the constitutional rights of detainees, such as Mr. Dodson, to be violated and failed to enforce a custom, plan or policy that prohibited inhumane treatment of detainees, and prohibited the deliberate indifference of serious medical health needs of a person in their care, custody, or control.

135.    Upon information and belief, acting under color of law, Defendant CSC knowingly, recklessly, or with gross negligence, failed to train, supervise, control, and discipline on a continuing basis Defendant Officers and other police officers in their duties to refrain from allowing the constitutional violations of detainees, including unlawful and malicious conduct, threatening behavior; deliberate indifference to serious medical needs; and to refrain from inhumane treatment, cruel and unusual punishment, unwarranted use of force or restraint, or other violations of the Constitutional and statutory rights of said detainees.

136.    Upon information and belief, Defendant CSC had knowledge, or, had it diligently exercised its duty to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the constitutional and statutory violations as alleged herein were to be committed by Defendant Officers.

137.    Upon further information and belief, Defendant CSC had the authority and power to prevent or aid in preventing the commission of said wrongs and misconduct; could have done

so by reasonable diligence; and knowingly, recklessly, or with gross negligence, failed and refused to do so.

138.    Upon information and belief, Defendant CSC directly or indirectly, through a pattern, custom, and practice and under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant Officers as herein described.

139.    As a direct and proximate cause of the neglect and intentional acts of Defendant CSC as set forth herein, Plaintiff's decedent Mr. Dodson suffered physical injury, severe mental anguish, asphyxiation, and, ultimately, death, all in connection with the deprivation of his Constitutional and statutory rights guaranteed by the Fourteenth Amendment of the Constitution of the United States and protected by 42 U.S.C. §1983.

140.    If the Defendant Officers had been trained appropriately to recognize the signs or symptoms of a person in a medical crisis and presented a danger to himself or others, Mr. Dodson would likely have received adequate medical health care and would not have been left alone, unobserved, monitored, or protected, when he became ill, vomited and aspirated with both wrists handcuffed to the bedrails; would not have required life support; and would not have died nine days later.

141.    Defendant CSC was deliberately indifferent based on its failure to adequately train its police officers to deal with persons demonstrating obvious and extreme intoxication and evidencing a serious medical need, such as Mr. Dodson; and failed to train its agents and employees, including Defendant Officers, to recognize, detain, care for, monitor, observe, supervise, and protect such persons, all in violation of the constitutional rights and privileges of all persons in South Charleston.

142.    The above-described policies, customs, or practices demonstrate a deliberate

indifference on the party of Defendant CSC to the constitutional rights of Mr. Dodson and were the direct, proximate cause of Defendant Officers Davis, Ferrebee, Poland, and Adkins violating Mr. Dodson's Fourteenth Amendment rights.

143.    The failure to train and supervise is so obvious as to be comparable to deliberate action, such that a reasonably foreseeable consequence of the defacto policy logically includes the deprivation of a detainee's constitutional rights, as evidence by the injuries to and death of Mr. Dodson as described herein.

144.    Defendant CSC, which bears responsibility for training and supervising all agents and employees of CSC and SCPD, was aware of, but chose to disregard, the unjustifiably high risk of harm that this defacto policy, custom, or practice of deliberate indifference would likely cause an at-risk detainee exhibiting extreme intoxication and demonstrated a clear need for medical treatment.

145.    Defendant CSC did not require appropriate in-service training or retraining of agents, employees, or police officers who encountered, detained, monitored, observed, or controlled detainees exhibiting medical health issues, were extremely intoxicated, and presenting a danger to themselves or others, and who may have required special assistance, safety, protection, and/or medical or mental health assistance or treatment.

146.    Defendant CSC had actual knowledge through prior incidents and internal communications about detainees in need of medical treatment, who were extremely intoxicated, and presented a danger to themselves or others.

147.    Upon information and belief, Defendant CSC took no remedial, adverse, or other action regarding the training or re-training of its police officers in recognized persons who were extremely intoxicated and/or in need of medical treatment or presented a danger to themselves or

others.

148.    Defendant CSC is responsible for the policies, procedures, customs, and practices implemented through its agents, departments and employees, and for any injuries occasioned thereby.

149.    The above-described policies, procedures, customs, and practices demonstrate a deliberate indifference on the part of policymakers of Defendant CSC to the Constitutional rights of persons within South Charleston and were the cause of the violations of the Constitutional rights of Mr. Dodson as alleged herein.

150.    Unless such practices are curtailed, there is a high likelihood of a re-occurrence of such unconstitutional acts by employees of Defendant CSC.

151.    As a direct and proximate cause of the negligent training and supervision by Defendant CSC, its agents and employees, Plaintiff's decedent Mr. Dodson suffered a violation of his Constitutional rights and privileges, great physical pain, mental anguish, all while in the care, custody, and control of Defendant Deputies and CSC; was required to be on life support for nine days, and, ultimately, died.

152.    As a direct and proximate cause of the conduct of Defendant CSC, Plaintiff has incurred funeral and other bills related to the demise of Mr. Dodson, administrative costs, attorney's fees and costs, and other related damages, thereby entitling her to an award of actual and consequential damages, costs, and reasonable attorneys' fees.

153.    Plaintiff is entitled to damages from such actions through 42 U.S.C. §1983 and *Monell v. Department of Social Services,* 436 U.S. 658.

154.    WHEREFORE, Plaintiff seeks judgment against the City of South Charleston for all damages allowable to her, as Administratrix of the Estate of Wayne Dodson, and to her

individually and as Mr. Dodson's mother and next of kin, including compensatory damages, pre-judgment and post-judgment interest,, plus attorney fees and costs as authorized by 42 U.S.C. §1942, and discretionary costs.

## COUNT VII
## Negligence

### (Defendant City of South Charleston)

155.   Plaintiff re-alleges and incorporate by reference, as if fully set forth herein, all of the allegations contained in the above paragraphs of the Complaint.

156.   The employees and agents of Defendant CSC, including Defendant Officers, at all times alleged herein were acting within the scope of their employment as employees and agents of Defendant CSC.

157.   Defendant CSC, its agents and employees, had a duty to exercise reasonable care to ensure the safety and protection of Mr. Dodson while he was in their custody and control; to protect his health and welfare.

158.   Upon information and belief, Defendant CSC by and through its agents and employees negligently breached their duties to Mr. Dodson on numerous separate occasions on February 29, 2024, and through separate circumstances.

159.   Upon information and belief, Defendant CSC negligently breached its duty to Mr. Dodson by failing to take steps to preclude foreseeable risks of harm to him.

160.   Upon information and belief, Defendant CSC negligently failed to enforce, adhere to, and implement adequate policies and procedures to protect Mr. Dodson from self-harm through allowing him to become extremely intoxicated while in the care, custody, and control of police officers employed by CSC.

161.   Upon information and belief, Defendant CSC failed to follow, institute, maintain, or enforce basic policies concerning the safety and care of detainees, including Mr. Dodson, who were in the care, custody and control of its police officers, including Defendant Officers.

162.   Upon information and belief, Defendant CSC did not take reasonable steps to properly monitor, observe, or supervise Mr. Dodson; did not take reasonable steps to prevent or prohibit Mr. Dodson from becoming extremely intoxicated; did not take reasonable steps to take him for medical care prior to attempting to leave him at the regional jail; failed to monitor and supervise him while he was in the hospital and remained in their care, custody and control; failed to prevent his physical and emotional abuse by leaving him handcuffed to the bedrails while he was incoherent and ill; failed to prevent violations of his constitutional rights; failed to prevent the deprivation of medical health care, and to prevent other forms of mistreatment or neglect as alleged herein.

163.   The negligent breach of duty by Defendant CSC proximately caused Mr. Dodson to suffer physical and emotional harm and death while he was in the care, custody and control of Defendant CSC and its agents and employees.

164.   At all relevant times, Defendant CSC failed to adequately and properly:

a.   employ processes that screen out and/or prevent the hiring of improper employees and agents;

b.   supervise its agents, employees, servants, staff members, and/or deputies they knew or should have known were violating constitutional rights of a detainee; and

c.   train the agents, employees, servants, staff members of CSC so that they knew or should have known they were abusing Mr. Dodson through their deliberate indifference to his serious medical needs.

165.   The negligent, reckless and outrageous acts and omissions of Defendant CSC as set forth above and herein, consisted of *inter alia*:

    a.  failing to properly and adequately supervise and discipline its employees to prevent the abuse that occurred to Mr. Dodson;

    b.  failing to adopt, enforce, and/or follow adequate policies and procedures for the protection and reasonable supervision of detainees and, in the alternative, failing to implement and comply with such procedures which had been adopted;

    c.  failing to implement, enforce, and/or follow adequate protective and supervisory measures for the protection of detainees;

    d.  failing to adopt/implement and/or enforce policies and procedures for the reporting of improper conduct by deputies;

    e.  ignoring, concealing, or otherwise mitigating the seriousness of the known danger that Defendant Officers posed; and

    f.  failing to prevent the Constitutional violations committed by Defendant Officers.

166.    The breach of duty and negligence by Defendant CSC and its agents and employees proximately caused damage to Mr. Dodson, including his pain and suffering, emotional distress, and death.

167.    The breach of duty and negligence by Defendant CSC and its agents and employees proximately caused damage to Plaintiff, including funeral and administrative expenses, economic losses, emotional pain, anguish, and suffering.

168.    Plaintiff respectfully demands that she be awarded judgment against the Defendant CSC in an amount to fully compensate her for the injuries suffered by Mr. Dodson and for her injuries, only up to the limits of the applicable insurance coverage, and all other losses recoverable in law, as allowed by law, together with prejudgment and post-judgment interest, costs expended in the prosecution of this lawsuit, including reasonable attorney fees, and for such other and further relief as the Court may deem proper.

169.    Plaintiff makes no claim for punitive damages against Defendant CSC.

**COUNT VIII**
**Negligent Training**

**(Defendant City of South Charleston)**

32

170.    Plaintiff re-alleges and incorporates by reference, as if is fully set forth herein, all the allegations contained in the above paragraphs of this Complaint.

171.    Defendant City of South Charleston ("CSC") had a legal duty to properly train its employees, including Defendant Officers and other persons employed through the South Charleston Police Department, to refrain from violating the rights of detainees; to obtain immediate medical health care for detainees or arrestees; to properly monitor, observe and supervise persons in their custody who suffered from clear medical issues; and to properly monitor, observe and supervise all persons in their custody.

172.    Defendant CSC had a legal duty to properly train its employees, including Defendant Officers, to properly monitor, observe, and supervise detainees so that their rights would not be violated. Further, Defendant CSC had a legal duty to properly train its employees, including Defendant Officers, to prevent any deliberate indifference to the serious medical health needs of a person in their control, custody, and care is a violation of that person's Constitutional rights.

173.    Defendant CSC had a legal duty to properly train its employees to understand the procedures and protocols regarding the care, custody, control, observation, and treatment of persons exhibiting signs of physical or mental health issues, including persons subjecting themselves or others to danger, and engaging in self-harm through extreme intoxication.

174.    Defendant CSC had a legal duty to properly train its employees to utilize appropriate detention techniques to monitor, observe and supervise persons in their control, custody, and care from being in positions where that detainee would be subjected to self-harm, extreme intoxication, or other inappropriate conduct on the part of CSC agents or employees.

175.   Upon information and belief, Defendant CSC has developed and maintained policies or customs that are inadequate for the tasks that police officers must perform, and such inadequacy is the result of CSC's exhibiting deliberate indifference to the Constitutional rights of persons in South Charleston, all of which caused the violation of the constitutional rights of Mr. Dodson, his injuries, suffering and death. Specifically, Defendant CSC's policies and customs violated the provisions of the Fourteenth Amendment and the rights to which Mr. Dodson was entitled.

176.   Upon information and belief, Defendant CSC maintained a policy and custom of inadequately and improperly hiring, training, and/or supervising its police officers, including Defendant Officers. Upon information and belief, Defendant CSC improperly tolerated and implicitly approved of prior acts of misconduct by its officers, including failing to protect detainees and providing appropriate medical care.

177.   Upon information and belief, Defendant CSC maintained a policy and custom of failing to require appropriate in-service training or retraining of officers who were known to have deprived detainees of safety, protection, and adequate medical care; and failed to properly investigate complaints against said officers or discipline them accordingly.

178.   Defendant CSC failed to properly train its employees, including Defendant Officers, to refrain from deliberate indifference to the medical needs of persons who were in their control, custody, and care, and to properly monitor, observe, and supervise persons who were in their control, custody, and care, especially persons who clearly displayed signs of extreme intoxication.

179.   Defendant CSC failed to properly train its employees with the South Charleston Police Department, Defendant Officers, regarding the Constitutional and statutory rights of

34

detainees under their control, custody, and care. Defendant CSC failed to adequately discourage further constitutional violations on the part of its police officers, resulting in a high likelihood of additional re-occurrences of the same improper misconduct.

180.    Defendant CSC, its agents and employees, including Defendant Officers, knew or should have known about how to detain, control, monitor, observe, or supervise persons displaying an obvious need for medical treatment, exhibiting extreme intoxication, and presenting a danger of harm to themselves or others.

181.    Defendant CSC, its agents and employees, failed to properly train the police officers of the SCPD, including Defendant Officers, on how to treat, control, monitor, observe, or supervise persons suffering from medical issues, exhibiting extreme intoxication, and presenting a danger of harm to themselves or others.

182.    Defendant Officers are agents and employees of Defendant CSC. At all times referenced herein, Defendant Officers were acting within the scope of their agency and employment with Defendant CSC.

183.    At all times referenced herein, Defendant Officers were acting individually as police officers employed by Defendant CSC.

184.    As a proximate result of Defendant's negligent training, Defendant Officers caused Mr. Dodson to suffer violations of his Constitutional and statutory rights and privileges.

185.    Defendant CSC is vicariously liable for the negligent actions and inactions of its employees and agents, including Defendant Officers.

186.    Defendant CSC was reckless in failing to properly train its agents and employees, including Defendant Officers, in proper police procedures and response procedures, including responding to persons who displayed symptoms of extreme intoxication; who had obvious medical

issues; recognizing such symptoms; providing immediate medical care; and calling for additional medical assistance.

187.    Defendant CSC was reckless in failing to properly train its agents and employees, including Defendant Officers, in recognizing their duty of care to all detainees, including those suffering from a medical health crisis, which would ensure the proper safety, protection, and medical care to which the detainees were entitled.

188.    Defendant CSC was reckless in failing to properly monitor and supervise its police officers who encountered and dealt with persons suffering a medical or mental health crisis.

189.    Defendant CSC was reckless and negligent in retaining police officers who failed to provide safety, protection, and medical assistance to detainees in their custody and control who demonstrated signs of extreme intoxication and presented a threat to themselves or others.

190.    Defendant CSC was reckless by implementing customs, policies, and procedures, whether written or unwritten, condoning, encouraging, and demonstrating indifference to the failure of its agents and employees, including Defendant Officers, to protect detainees and provide adequate medical care to those suffering from medical or mental health issues, who demonstrated obvious intoxication, and presented a threat to themselves or others.

191.    Defendant CSC is liable for its negligent training, the negligent acts and omissions of its employees and those whom it supervised, and for its violations of clearly established duties under the law.

192.    Any reasonable and reasonably well-trained law enforcement supervisor would recognize that failing to take action to correct, discipline, or remove police officers employed by CSC who previously demonstrated a lack of training, a failure to provide safety and protection to detainees, and a failure to obtain adequate medical assistance was likely to enable and encourage

agents and employees of CSC, including Defendant Officers, to breach their duty of care to detainees such as Mr. Dodson, and would one day result in the unnecessary and unconstitutional death of a citizen in violation of clearly established laws and Constitutional provisions.

193.   Any reasonable and reasonably well-trained law enforcement supervisor would recognize that failing to take action to correct, discipline, or remove police officers of the SCPD based upon their proven and alleged dangerous misconduct, including the failure to recognize that a detainee suffered from an obvious and serious medical health need, and the failure to offer safety, protection, and medical care to the detainee, was a violation of clearly established laws and Constitutional provisions.

194.   Defendant CSC, through its agents and employees, including supervisors of Defendant Officers, failed to properly train the agents and employees of CSC and SCPD, including Defendant Officers, regarding the proper detention, treatment, care, custody, monitoring, observing, and supervising of persons suffering from intoxication and medical health issues, and regarding the prevention of deliberate indifference to the safety and serious medical needs of such detainees.

195.   As a result of the above-described policies and customs, agents and employees of CSC, including Defendant Officers, believed that their actions would not be properly monitored by supervisory officers, and that their unconstitutional misconduct would not be investigated, but rather it would be sanctioned, tolerated, and not subject to disciplinary actions.

196.   Defendant CSC knowingly and recklessly failed to train, supervise, control, and discipline on a continuing basis its agents and employees, including Defendant Officers, in their duties to ensure the safety and protection of detainees suffering from intoxication and a medical health crises, such as Mr. Dodson, and failing to provide immediate and adequate medical and

mental health care, thereby resulting in a deprivation of their constitutional and statutory rights, privileges, and immunities secured by the United States Constitution and all applicable federal and state laws, statutes, rules, regulations, and procedures.

197.   Defendant CSC directly or indirectly, under the color of law, approved or ratified the unconstitutional conduct of the Defendant Officers.

198.   As a direct and proximate cause of the negligent training of the agents and employees of CSC, Mr. Dodson suffered physical pain, mental anguish, and aspiration while in the care, custody, and control of the Defendant Officers and CSC; was placed on life support and ultimately died as a result of the actions and inactions of Defendant CSC and Defendant Officers.

199.   As a direct and proximate cause of the negligent training by Defendant CSC, Plaintiff has incurred funeral and other bills related to the demise of Mr. Dodson, administrative costs, attorney's fees and costs, and other related damages, thereby entitling her to an award of actual and consequential damages, costs, and reasonable attorneys' fees.

200.   Plaintiff respectfully demands that she be awarded judgment against Defendant CSC in an amount to fully compensate her for her injuries including but not limited to the pain and suffering and death of Mr. Dodson, Plaintiff's funeral, administrative, and other expenses, and all other losses recoverable in law, all as allowed by law, together with pre- and post-judgment interest, costs expended in the prosecution of this lawsuit, including reasonable attorney fees, and for such other and further relief as the Court may deem proper.

201.   Plaintiff makes no claim for punitive damages against Defendant CSC.

## COUNT IX
## Negligent Supervision

## (Defendant City of South Charleston)

202.    Plaintiff re-alleges and incorporates by reference, as if is fully set forth herein, all the allegations contained in the above paragraphs of this Complaint.

203.    Defendant CSC had a legal duty to properly supervise its employees, including Defendant Officers, with respect to proper monitoring, observation, and supervision of detainees and with respect to violations of Constitutional and statutory rights through deliberate indifference to serious medical or mental health needs.

204.    Defendant CSC had a legal duty to properly supervise its employees, including Defendant Officers, and ensure that they knew that a detainee was entitled to medical and mental health care while under the control, custody, and care of police officers.

205.    Defendant CSC failed to properly supervise its employees, including Defendant Officers, so as to ensure that they were not deliberately indifferent to the medical health needs of persons in their control, custody, and care, and to properly monitor, observe, and supervise persons who were in their control, custody, and care, especially persons who clearly displayed extreme intoxication and a need for medical treatment.

206.    Defendant CSC had a duty to supervise its employees, including Defendant Officers, to ensure that they understood the procedures and protocols regarding the care, custody, control, observation, and treatment of persons exhibiting signs of intoxication and physical or mental health issues.

207.    Defendant CSC failed to properly supervise its employees, including Defendant Officers, to ensure they did not violate the Constitutional or statutory rights of detainees.

208.    As a proximate result of Defendant's negligent supervision, Plaintiff's decedent Mr. Dodson suffered extreme intoxication, a lack of medical treatment, great physical and emotional distress at being handcuffed to the bedrails while he was sick, vomited, and aspirated, all while

in the care, custody, and control of Defendant Officers and Defendant CSC, and who ultimately

died as a result of the actions and inactions of said Defendants.

209.    As a proximate result of Defendant's negligent supervision, Mr. Dodson failed to

receive treatment for his serious medical needs; suffered great pain, emotional distress, and

ultimately, death.

210.    Defendant CSC is liable to Plaintiff for its negligent supervision, the negligent acts

and omissions of its employees, including Defendant Officers, and for their violations of clearly

established duties under the law.

211.    Plaintiff  respectfully demands that she be awarded judgment against Defendant

CSC in an amount to fully compensate her for the injuries and death of Mr. Dodson, as well as her

injuries, only up to the limits of the applicable insurance coverage, including but not limited to Mr.

Mr. Dodson's pain and suffering, funeral expenses, and all other losses recoverable in law, as allowed

by law, together with pre- and post-judgment interest, costs expended in the prosecution of this

lawsuit, including reasonable attorneys' fees, and for such other and further relief as the Court may

deem proper.

212.    Plaintiff makes no claim for punitive damages against Defendant CSC.

## COUNT X
## Negligent Retention

### (Defendant City of South Charleston)

213.    Plaintiff re-alleges and incorporates by reference, as if is fully set forth herein, all

the allegations contained in the above paragraphs of this Complaint.

214.    Defendant City of South Charleston had a legal duty to properly supervise and

monitor its employees to ensure that they refrained from being deliberately indifferent to the

medical needs of detainees and arrestees and to refrain from violating their Constitutional and statutory rights and privileges.

215.    Defendant CSC had a legal duty to properly supervise and monitor its employees with respect to obtaining medical treatment for persons in their care, custody, and control; with respect to properly monitoring, observing, and supervising persons who were in their care; and to ensure that there was no violation of the Constitutional rights of all detainees.

216.    Defendant CSC had a legal duty to dismiss all employees that violated the Constitutional rights of detainees and arrestees; who exhibited deliberate indifference to the serious medical needs of detainees and arrestees; and who demonstrated a deliberate indifference to the serious medical needs of detainees or arrestees, all in violation of their Constitutional and statutory rights.

217.    As a proximate result of Defendant's negligent retention of Defendant Officers, Mr. Dodson suffered a violation of his Constitutional rights and privileges while in the care, custody and control of Defendant Officers and Defendant CSC.

218.    Defendant CSC is liable for its negligent retention of such employees, the negligent acts and omissions of such employees, and for their violations of clearly established duties under the law.

219.    As a proximate result of Defendant's negligent retention of Defendant Officers, Plaintiff's decedent Mr. Dodson suffered extreme intoxication; a lack of medical health treatment; a lack of monitoring, observation and supervision; aspiration and cardiac arrest while handcuffed to his bedrails, all while in the care, custody, and control of Defendant Officers and Defendant CSC, and ultimately died as a result of the actions and inactions of said Defendants

41

220.   As a proximate result of Defendant's negligent retention of Defendant Officers, Mr. Dodson failed to receive treatment for his serious medical needs; suffered great pain and emotional distress, was placed on life-support for nine days, and, ultimately died as a result of the actions and inactions of said Defendants.

221.   Plaintiff respectfully demands that she be awarded judgment against the Defendant CSC in an amount to fully compensate her for her injuries, only up to the limits of the applicable insurance coverage, including but not limited to Mr. Dodson's pain and suffering and ultimate death; Plaintiffs funeral, administrative, and other expenses, and all other losses recoverable in law, as allowed by law, together with pre- and post-judgment interest, costs expended in the prosecution of this lawsuit, including reasonable attorneys' fees, and for such other and further relief as the Court may deem proper.

222.   Plaintiff makes no claim for punitive damages against Defendant CSC.

## DAMAGES

223.   Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, all of the allegations contained in the above paragraphs of this Complaint.

224.   Defendants are liable for all damages mandated by law by virtue of the bodily injuries to and death of Wayne Allen Dodson, including:

(a)   Damages for all pain, suffering and emotional distress suffered by Mr. Dodson up to the point of his death;

(b)   All damages prescribed and authorized by *West Virginia Code* §55-7-6, namely; damages for the following: (A) Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent; (B) compensation for reasonably expected loss of (i) income of the decedent, and (ii) services, protection, care and assistance provided by the decedent; (C) expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death; and (D) reasonable funeral expenses;

(c)    Punitive damages against all defendants against whom such damages are authorized by applicable law; and,

(d)    All other compensatory damages and other relief recognized, permitted, and warranted by applicable law.

**WHEREFORE**, Plaintiff prays for and demands a trial by jury on all issues so triable and for judgment against the Defendants in an amount exceeding the minimum jurisdictional requirements of this Court, and in such sums as will fairly and fully compensate Plaintiff for her losses, injuries, and damages proximately caused by the wrongful conduct of the Defendants, including but not limited to:

A.    All recoverable damages against Defendants Herbert J. Thomas Memorial Hospital Association, dba Thomas Memorial Hospital;

B.    All recoverable damages against Defendants Dr. Andrew S. Morgan and Kyle Lynne Fairchild, R.N;

C.    All recoverable damages, including and without limitations those damages permitted and available under 42 U.S.C. § 1983 against Defendants Sgt. Andrew Ferrebee and Sgt. A. Davis;

D.    All recoverable damages, including and without limitations those damages permitted and available under 42 U.S.C. §1983 against Defendants Officer Jacob Poland and Officer B.C. Adkins;

E.    All recoverable damages, including and without limitations those damages permitted and available under 42 U.S.C. §1983 against Defendant City of South Charleston and for the actions and inactions of its employees and agents for which it is vicariously liable;

F.    All recoverable damages, including and without limitations those damages permitted and available under pendent state law claims against Defendant City of South Charleston and

for the actions and inactions of its agents and employees, for which it is vicariously liable; including damages for negligence, negligent training, negligent supervision, and negligent retention;

G. General damages on all counts for all past and future physical pain, past and future medical bills, mental suffering, emotional distress, trauma, conscious pain and suffering, loss of future earning capacity, mental anguish, past and future pain and suffering, and all other damages as allowed by law that have been suffered by the Plaintiff;

H. Compensatory damages for all past and future damages including but not limited to economic losses and expenses incurred by the Plaintiff as a result of the Defendants' conduct;

I. Damages in compensation for pain and suffering;

J. Damages in compensation for loss of enjoyment of life;

K. Any and all other allowable compensatory damages;

L. Punitive damages against Defendant Herbert J. Thomas Memorial Hospital Association, dba Thomas Memorial Hospital and individual Defendants Dr. Andrew S. Morgan, Kyle Lynne Fairchild, R.N, sufficient to punish and deter the Defendants for their willful, wanton, reckless conduct, undertaken with conscious, reckless, and outrageous indifference to the health, safety, and welfare of Plaintiff and Plaintiff's decedent and to deter such conduct in the future;

M. Punitive damages against individual Defendants Sgt. Andrew Ferrebee, Sgt. A. Davis; Officer Jacob Poland and Officer B.C. Adkins sufficient to punish and deter the Defendants for their willful, wanton, reckless conduct, undertaken with conscious, reckless, and

outrageous indifference to the health, safety, and welfare of Plaintiff and Plaintiff's decedent and to deter such conduct in the future;

N.  Pre- and post-judgement interest;

O.  Costs incurred in this action and reasonable attorneys' fees under 42 U.S.C. § 1988, 42 U.S.C § 1983, and as authorized by state law and all other applicable legal authority; and

P.  Such other and further relief as may seem fair and just and that the interests of justice may require and that this Court deems just under the circumstances.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**Cheryl Fox, Administratrix
of the Estate of Wayne A. Dodson,
By Counsel**

*/s/ L. Dante diTrapano*
L. Danté diTrapano (WVSB #6778)
Amanda J. Davis (WVSB #9375)
Charles F. Bellomy (WVSB #9117)
**CALWELL LUCE DITRAPANO PLLC**
Law and Arts Center West
500 Randolph Street
Charleston, WV 25302
(304) 343-4323 Telephone
(304) 344-3684 Facsimile
*adavis@cldlaw.com*
*dditrapano@cldlaw.com*
*cbellomy@cldlaw.com*

and

W. Jesse Forbes (WVSB# 9956)
Jennifer N. Taylor (WVSB #4612)
FORBES LAW OFFICES, PLLC
1118 Kanawha Blvd. East
Charleston, WV  25301
(304) 343-4050 Telephone
(304) 343-7450 Facsimile
*wjforbes@forbeslawwv.com*
*jtaylor@forbeslawwv.com*

*Counsel for Plaintiff*

45